JAISAN, INC., Plaintiff,

v.

Linda SULLIVAN, Karen Goddard, John Sullivan, Michael Sullivan, Virginia Richards, Carol Pohlman, Estate of Thomas Sullivan c/o Michael Sullivan, Estate of Evelyn Richards c/o Virginia Richards, Personal Representative of Estate, Estate of Margaret Sullivan c/o Carol Pohlman, Executrix, Defendants.

No. 96 Civ. 4336(WK).

United States District Court,
S.D. New York.

March 25, 1998.

Philip McGrory, New York City, for Plaintiff.

Michael G. Biggers, Bryan Cave L.L.P., New York City, for Defendants.

MEMORANDUM AND ORDER

WHITMAN KNAPP, Senior District Judge.

Plaintiff Jaisan, Inc., a company engaged in the business of locating missing heirs, brought an action against defendants (six individuals and four estates) alleging breach of contract and tortious conversion for failure to pay plaintiff a percentage of the assets it located on defendants' behalf. By Memorandum and Order, dated February 27, 1997, we granted defendants' collective motion, pursuant to Rule 12(b)(2), to dismiss the complaint for lack of personal jurisdiction (hereinafter "the February 27th Order)."

At that time, defendant Michael Sullivan had also moved for sanctions and attorney's fees, pursuant to Rule 56(g) of the Federal Rules of Civil Procedure, on the ground that an affidavit filed by plaintiff's president in opposition to his motion was made in bad faith.[1] In the February 27th order, we declined to address this motion, but instead remanded the matter to Magistrate Judge Sharon E. Grubin. On October 14, 1997, she issued a Report recommending that defendant's motion for attorney's fees be denied. Defendant Sullivan has brought objections.

Upon consideration, we adopt Magistrate Judge Grubin's Report in its entirety. Accordingly, defendant's Rule 56(g) motion is denied.

**SO ORDERED.**

## REPORT AND RECOMMENDATION TO THE HONORABLE WHITMAN KNAPP

On March 3, 1997 judgment for defendants was entered in this action upon your Honor's granting of their motions for dismissal and, with respect to defendant Michael Sullivan, for summary judgment. Plaintiff, a company engaged in the business of locating missing heirs, alleged breach of contract and tortious conversion against defendants, beneficiaries under an estate, because of defendants, failure to pay plaintiff a percentage of the assets it located on defendants' behalf. Pending now is defendant Sullivan's motion for attorney's fees pursuant to Fed.R.Civ.P. 56(g) on grounds that an affidavit filed by plaintiff's president in opposition to Sullivan's motion for summary judgment was made in bad faith. For the reasons set forth below, I recommend that the motion be denied.

### FACTS

Plaintiff filed the complaint herein on June 12, 1996, alleging, *inter alia*, that defendants, all of whom are either residents of Arizona or California, were liable under agreements executed in 1995. The complaint alleged that this court had diversity jurisdiction over the action pursuant to 28 U.S.C. § 1332(a)(1) but, owing to the omission of a crucial word, did not allege plaintiff's citizenship. Paragraph 1 of the complaint, which is the last line of its first page, read "Plaintiff, Jaisan, is a corporation incorporated under the laws of the State of New." Complaint ¶ 1.

On September 9, 1996, defendant Sullivan, a citizen of Arizona, moved for summary judgment, arguing (1) lack of personal jurisdiction; (2) lack of subject matter jurisdiction because plaintiff failed to allege its citizenship and could not assert any citizenship because its corporate charter had been revoked in 1994 and (3) that plaintiff lacked capacity to sue because it was a dissolved New Jersey corporation and was not licensed to do business in New York. This third argument had two components. First, Sullivan argued that plaintiff as a dissolved New Jersey corporation could sue only for the purpose of winding up its affairs and not to enforce contracts executed in 1995 after its corporate charter had been revoked. Second, Sullivan argued that because plaintiff was not authorized to do business in New York, it was precluded by New York Business Corporation Law § 1312 from bringing a diversity action in federal courts in New York. In support of these arguments, Sullivan submitted a certificate dated September 6, 1996 from the New Jersey Department of State which stated that plaintiff's corporate charter, originally filed with the Department on December 30, 1976, had been revoked on May 31, 1994 for "non-payment of Annual Reports" and had not been reinstated. Affidavit of Wayne M. Josel dated September 9, 1996, Ex. 1.

Plaintiff's response to the motion did not directly address Sullivan's claim that New Jersey had revoked its corporate charter. In response to Sullivan's argument alleging lack of diversity jurisdiction, plaintiff argued that "Jaisan is a New Jersey Corporation duly licensed to [sic] business within the State of New York," that its principal place of business was in Manhattan and that it was "a citizen of New York (its principal place of

---

1. Defendant Sullivan actually moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. However, as with the other defendants, we dismissed the claims against him for lack of personal jurisdiction.

business)" for purposes of establishing diversity jurisdiction. Memorandum of Law Submitted in Behalf of Plaintiff Jaisan Inc. Opposing Defendant Michael Sullivan's Motion for Summary Judgment, p. 2. Plaintiff's entire response to Sullivan's argument that plaintiff was a defunct corporation not licensed to do business in New York was contained in the following paragraph in its memorandum of law:

> III. *JAISAN IS A NEW JERSEY COR-PORATION DULY LICENSED TO DO BUSINESS IN NEW YORK.*
>
> Jaisan was formed in 1976 in the State of New Jersey with its principal place of business at 521 Fifth Avenue, County and State of New York. It is authorized to do business in the State of New York under Section 1304 of the Business Corporation Law (BCL). BCL § 1312 does preclude the maintaining of an action within New York if a corporation is not licensed to do business in New York.... This is a revenue measure and fulfilled when the state gets its money. Thus, if the plaintiff corporation is in breach of the statute when it begins an action but complies while the action is pending, the action is validated ab initio and may proceed unhindered [*Oxford Paper Co. v. S.M. Liquidation Co.*, 45 Misc.2d 612, 257 N.Y.S.2d 395 (Sup.Ct.N.Y.County, 1965)].

*Id.*, p. 6.

In support of its contentions, plaintiff submitted an affidavit of its president, Charles Ginsberg, which is the subject of the instant Rule 56(g) motion, stating in relevant part:

1. I am the President of Jaisan Inc.; [sic] the plaintiff in the above action and submit this affidavit to show diversity of Citizenship and Jurisdiction in the State of New York.

2. Jaisan Inc. is a corporation formed under the laws of the State of New Jersey on December 30, 1976.

3. Jaisan Inc. maintains its principal place of business at 521 Fifth Avenue, New York, N.Y. 10175 in the County of New York and State of New York on September 10, 1996.

4. Jaisan Inc. is licensed to do business in the State of New York under Section 1304 of the Business Corporation Law "To engage in any [sic] or activity permitted by the laws of State of New Jersey for which corporations may be organized under the Business Corporation Law of the State of New York...."

Affidavit of Charles Ginsberg dated September 24, 1996 ("Ginsberg Affidavit") ¶¶ 1–4.

Attached as an exhibit to, but not referenced in, the Ginsberg Affidavit was a portion of a certified copy of plaintiff's "Application for Authority" to do business in New York under Business Corporation Law § 1304 (the "Application"). Ginsberg Affidavit, Ex. A. The four-page exhibit consisted of a form from the New York Secretary of State, certifying that "the annexed copy" was a true copy of the original Application; copies of pages 1 and 2 of the Application; and the "Blueback" to the Application, designated as page 4. Page 3 of the Application was missing. Dates on the Blueback indicate that the Application was submitted to the New York Secretary of State shortly before plaintiff received Sullivan's motion for summary judgment and was "filed" by the State on September 10, 1996, which thereby licensed plaintiff to do business as of that date.

Sullivan's reply papers supplied the missing page 3 of the Application: a certificate from the New Jersey Department of State identical to that included in Sullivan's moving papers, except for its date, showing that New Jersey had revoked plaintiff's charter in 1994. Affidavit of Rodney W. Ott dated October 9, 1996 ("Ott Affidavit"), Ex. A. The date, however, that the State of New Jersey had issued that document was shown to be August 19, 1996. In other words, plaintiff had obtained this document on that date and submitted it to the New York Secretary of State in order to become licensed to do business. Sullivan charged that plaintiff and its attorneys "either knew or should have known that the exhibit was in fact incomplete," but had attempted to deceive the court by including in the exhibit the certificate stating that it was a true copy of the original. Reply Memorandum in Support of Michael Sullivan's Motion for Summary Judgment, p. 6. Reiterating the evidence set forth in the

moving papers concerning the revocation of plaintiff's corporate charter, Sullivan further argued that Ginsberg's statement that plaintiff "is a corporation incorporated under the laws of New Jersey" was a "blatant falsehood" and, because plaintiff was not a corporation, plaintiff could not "properly apply for authority to conduct business in New York." *Id.*, pp. 5–6. However, an affidavit Sullivan's attorney submitted with the reply papers stated that the New York Secretary of State had, in fact, "mistakenly accepted" plaintiff's Application. Ott Affidavit ¶ 8.

In a half-page argument included at the end of his reply memorandum, Sullivan moved for an award of attorney's fees under Fed.R.Civ.P. 56(g), asserting that plaintiff's "affidavits and other papers were clearly made and presented to the court in bad faith." Reply Memorandum in Support of Michael Sullivan's Motion for Summary Judgment, p. 8. Sullivan claimed that, despite knowing that its charter had been revoked, plaintiff had "persistently attempted to mislead defense counsel and this Court by filing false affidavits, incomplete documents [and] deceptive briefs." *Id.*

On February 27, 1997 your Honor granted Sullivan's motion for summary judgment for lack of personal jurisdiction and did not discuss the issues of whether diversity jurisdiction existed or whether plaintiff had capacity to bring this action. You did not address Sullivan's Rule 56(g) motion, directing instead that Sullivan advise the court within 20 days if he wished to pursue the motion. By letter dated March 19, 1997, Sullivan informed the court that he did wish to proceed with the Rule 56(g) motion.

On April 4, 1997 plaintiff filed a memorandum responding to Sullivan's Rule 56(g) motion, arguing that the statements in the Gins-

berg Affidavit were true. Plaintiff asserts that it continues to be a corporation under New Jersey law, which provides that dissolved corporations continue their "corporate existence" even though they are prohibited from carrying on any business other than winding up their corporate affairs. Reply to Request for Attorney's Fees, pp. 1–2 (citing N.J.Stat.Ann. § 14A:12–9(1)). Plaintiff further states that its Application for Authority was filed by the New York Secretary of State on September 10, 1996 and that plaintiff was thus authorized to do business in New York on September 24, 1996, the date Ginsberg signed his affidavit.[1] Plaintiff further notes that the missing page 3 had already been submitted to the court in Sullivan's moving papers and argues that the omission of the document was not "done in bad faith." *Id.*

## DISCUSSION

Fed.R.Civ.P. 56(g) provides in relevant part:

> Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees....

The Rule does not define the term "bad faith," and there is little case law applying Rule 56(g). However, "[i]n the rare instances in which Rule 56(g) sanctions have been granted, the conduct has been egregious." *Moorer v. Grumman Aerospace Corp.*, 964 F.Supp. 665, 676 (E.D.N.Y.1997); *see Conroy v. Anchor Sav. Bank*, 810 F.Supp. 42, 48 (E.D.N.Y.1993).[2] Thus, attorney's fees have

---

1. This memorandum also contains factual allegations purporting to explain when plaintiff realized that its charter had been revoked and that page 3 of the Application was missing from the exhibit to the Ginsberg Affidavit because the Application "was not completed by plaintiff or its counsel so neither knew the complete document" was not as plaintiff had submitted. Since these allegations are unsubstantiated by any affidavit or affirmation, we cannot consider them in deciding this motion.

2. This is consistent with case law applying other statutes and rules establishing a bad faith exception to the usual "American Rule" that each party pays his or her own attorney's fees. *See, e .g., U.S. Industries Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1240 (10th Cir.1988), in which the Tenth Circuit noted that while courts can invoke a bad faith exception and award attorney's fees under the court's inherent powers or federal law such as Fed.R.Civ.P. 11 and 28 U.S.C. § 1927, the award of attorney's fees under

been awarded under Rule 56(g) where affidavits contained perjurious or blatantly false allegations or omitted facts concerning issues central to the resolution of the case. For example, a Rule 56(g) motion was granted in *Ansley v. Greenbus Lines, Inc.,* No. 96 Civ. 3905(MBM)(DFE), 1997 WL 426110 (S.D.N.Y. July 30, 1997), where plaintiff, a bus driver who was terminated after failing a drug test, falsely stated in his affidavit in opposition to summary judgment that his doctor had said he was on medications that would produce a false positive on the test. Finding that absent this medical excuse it was "crystal clear" that one of plaintiff's claims was meritless, the court ordered plaintiff to pay the expenses caused by the filing of the affidavit. In *Warshay v. Guinness PLC,* 750 F.Supp. 628 (S.D.N.Y.1990), *aff'd,* 935 F.2d 1278 (2d Cir.1991), an action for breach of an oral agreement, defendant moved for summary judgment on the ground that the claim was barred by the New York statute of frauds. Although plaintiff had stated in an earlier affidavit that he was "New York-based," he avoided summary judgment by falsely swearing that New York had "not had a single contact" with any aspect of the oral agreement and omitting mention in his affidavit of several substantial contacts. *Id.* at 632. Finding that these contacts "were not trivial or easily overlooked" and that summary judgment might have been granted had plaintiff been forthcoming, the court granted defendant the attorney's fees incurred as a result of the affidavit. *Id.* at 639, 641.

Similarly, in *Barticheck v. Fidelity Union Bank/First National State,* 680 F.Supp. 144, 150 (D.N.J.1988), a dispute over whether a letter written by plaintiff to defendant constituted a release of plaintiff's contract claim, the court granted defendant's Rule 56(g) motion where plaintiff attempted to create a material question of fact sufficient to defeat summary judgment by alleging in her affidavit that, contrary to her prior testimony, there had been fraud in the procurement of the release. In *Acrotube, Inc. v. J.K. Financial Group, Inc.,* 653 F.Supp. 470, 478

(N.D.Ga.1987), a Rule 56(g) motion was granted where a defendant, despite having admitted in a state court action to defaulting on a loan, simply falsely denied the default in an attempt to create a factual issue precluding summary judgment.

On the other hand are cases denying Rule 56(g) motions where a litigant's actions, even though wrongful, did not affect the disposition of the summary judgment motion. For example, in *Weinreich v. Sandhaus,* No. 83 Civ. 3966 (CES), 1989 WL 130641 (S.D.N.Y. July 24, 1989), a contractual dispute relating to an entertainment system, the court rejected a Rule 56(g) motion alleging that statements in defendant's affidavit concerning the amount of rental income generated by the system and whether projectors used in the system utilized closed loop scanners were inconsistent with his deposition testimony. Although noting that the statements were ambiguous, making assessment of their accuracy difficult, the court found the fact that the allegedly erroneous statements had no material effect on the disposition of the motion pending before the court was a "sufficient basis to deny plaintiff's application." *Id.* at *6. In so ruling, the court relied on *Faberge Inc. v. Saxony Products, Inc.,* 605 F.2d 426 (9th Cir.1979), in which the Ninth Circuit ruled that, even if an affidavit submitted in opposition to summary judgment had been made in bad faith, no award under Rule 56(g) was warranted where the denial of summary judgment was not caused by the presence of the affidavit in the record. In *Sherman v. Bell Atlantic,* No. 95 Civ. 1817 (MBM), 1996 WL 492985 (S.D.N.Y. Aug. 29, 1996), plaintiff's Rule 56(g) motion alleged that defendant's affidavits contained factual errors and omitted certain documents. The court denied the motion, pointing out that those factual disputes were minor and, in any event, the case would turn on the credibility of the witnesses at trial and that "failure to attach specific documents, or parts of documents, does not prevent plaintiff from presenting the documents he believes to be probative." *Id.* at *8.

the bad faith exception is punitive and can be imposed "only in exceptional cases and for domi-

nating reasons of justice." *Id.* at 1241.

Plaintiff's conduct herein, while far from exemplary, was simply not of the type which has been found to warrant an award of attorney's fees under Rule 56(g) and, moreover, even if it were "egregious" as defined under that case law, it did not affect the outcome of the case and Rule 56(g) sanctions would be inappropriate for that reason. Ginsberg's affidavit does not contain any perjurious statements or blatant falsehoods. Ginsberg's statement that "Jaisan Inc. is a corporation formed under the laws of the State of New Jersey on December 30, 1976," Ginsberg Affidavit ¶ 2, was technically correct. Although plaintiff may be a dissolved corporation, it remains a corporation, *see* N.J.Stat.Ann. § 14A:12–9(1) (West 1997) ("a dissolved corporation shall continue its corporate existence"), and it is undisputed that it was formed or incorporated under the laws of the State of New Jersey on December 30, 1976. Ginsberg's statement that "Jaisan Inc. is licensed to do business in the State of New York under Section 1304 of the Business Corporation Law," Ginsberg · Affidavit ¶ 4, was true when he made it on September 24, 1996. The Application was filed by the New York Department of State on September 10, 1996, and pursuant to Business Corporation Law § 1305, plaintiff was authorized to do business upon filing. Although the New York Secretary of State may have mistakenly filed it in the light of plaintiff's revoked charter, it nevertheless did so. Plaintiff unquestionably omitted page 3 of the Application, showing the revocation of its charter, from the exhibit to the Ginsberg Affidavit. Although the parties dispute whether this omission was intentional, we do not need to resolve that issue because the omission was inconsequential. The page omitted from the Application had already been submitted as part of Sullivan's moving papers and Sullivan pointed out the fact of revocation again in its reply papers, again supplying the document. The critical fact certified in the document— that plaintiff's corporate charter had been revoked as of the time plaintiff entered into agreements with the defendants—was undis-

puted. Moreover, there was no dispute over the fact that plaintiff was in fact authorized to do business in New York as of September 10, 1996, even though that authority may have been improvidently granted. Finally, as plaintiff's omissions in its cleverly worded affidavit and in the exhibit were germane solely to issues which your Honor never reached, since summary judgment was granted for lack of personal jurisdiction, Rule 56(g) attorney's fees are unwarranted. *See Sherman v. Bell Atlantic, Weinreich v. Sandhaus,* and *Faberge Inc. v. Saxony Products, Inc., supra.*[3]

Although I conclude that plaintiff's actions do not constitute conduct that provides a basis for attorney's fees under Rule 56(g), we should not condone the actions of plaintiff's counsel in this case. Attorneys, as officers of the court, are expected to temper their enthusiasm for a client's cause with careful regard for the obligations of truth, candor, accuracy and professional judgment. *See Oliveri v. Thompson,* 803 F.2d 1265, 1267 (2d Cir.1986), *cert. denied sub nom. Suffolk County v. Graseck,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). Here, plaintiff's counsel, faced with facts that supported Sullivan's argument that plaintiff lacked capacity to sue, decided to ignore both the argument and the facts supporting them and obfuscate the situation rather than confirm the undeniable facts and make the legitimate arguments that were available under the circumstances. And plaintiff's rush to file its Application to do business with the New York Secretary of State is obvious. If the omissions in its papers were not intentional, they were, at best, the result of an extreme sloppiness and carelessness that an attorney should hardly exhibit. While plaintiff's attorney's behavior may not have violated the standards of Rule 56(g) given the circumstances of this case and its resolution, it is regrettable because it is not the conduct one expects from an officer of this court. Hope-

---

3. I might point out that if Sullivan's motion were granted, the attorney's fees recoverable would be *de minimis* in any event. The only expenses even arguably necessarily incurred by Sullivan as a result of the conduct of plaintiff complained of would appear to have been those associated with simply pointing out again in his reply memorandum that plaintiff's charter had been revoked and reiterating the arguments already set forth in his moving papers.

fully, plaintiff's attorney will take more care in future matters.

## CONCLUSION

For the reasons set forth above, I recommend that defendant Sullivan's motion for attorney's fees pursuant to Fed.R.Civ.P. 56(g) be denied.

Copies of this Report and Recommendation were mailed to:

Philip L. McGrory, Esq.
1 East 43rd Street, 29th Floor
New York, New York 10017

Wayne M. Josel, Esq.
Bryan Cave LLP
245 Park Avenue
New York, New York 10167–0034

Donald H. Shaw, Esq.
Shaw & Markstein
20   Exchange Place
New York, N.Y. 10006

The parties are hereby directed that if you have any objections to this Report and Recommendation you must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court and send copies to the Honorable Whitman Knapp, to the opposing party and to the undersigned. Failure to file objections within ten (10) days will preclude later appellate review of any order that will be entered by Judge Knapp. See 28 U.S.C. § 636(b)(1); Rules 6(a), 6(e), and 72(b) of the Federal Rules of Civil Procedure; *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied;* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam); *McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983) (per curiam).

GRUBIN, United States Magistrate Judge.

Dated: New York, New York.
October 14, 1997.